Tamineh Roshanian, Esq. (SBN 139216)
Roshanian Payman, PC
30721 Russell Ranch Road, Suite 140
Westlake Village, CA 91362-7383
Tel:    (805) 630-2155
Email: tami@roshanianpayman.com

Attorneys for Defendants EWI CAPITAL, LLC

And ZHE ZHANG

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (San Fracisco)

| | |
|---|---|
| LEO MIDDLE EAST FZE and LEO HOLDINGS HONG KONG LIMITED; <br><br> Plaintiffs, <br> vs. <br><br> EWI CAPITAL, LLC, ZHE ZHANG, and DOES 1 through 10, inclusive, <br><br> Defendants. | ) Case No.: 3:21-cv-03985-SK <br> ) <br> ) Assigned for all purposes to: <br> ) Judge: **Hon. Sallie Kim** <br> ) Department: C <br> ) <br> ) **DEFENDANTS' NOTICE OF MOTION** <br> ) <br> ) **DEFENDANTS' MOTION TO DISMISS,** <br> ) **INCLUDING MEMORANDUM OF** <br> ) **POINTS & AUTHORITIES** <br> ) <br> ) **Date of Hearing: August 9, 2021** <br> ) **Courtroom C, by Video conferencing** <br> ) **Time: 9:30 am** <br> ) **Judge: Hon. Sallie Kim** |

TO THE HONORABLE COURT AND PLAINTIFFS:

PLEASE TAKE NOTICE that, on Tuesday, August 9, 2021, at 09:30 a.m. in San Francisco Courthouse, Courtroom C—15th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, EWI CAPITAL, LLC ("EWI Capital"), and ZHE ZHANG ("Zhang") through Counsel of Record, Tamineh Roshanian, Esq., hereby will, and hereby does, move to dismiss all three causes of action in the Complaint against them because the Complaint is not supported by sufficient facts.

-1-

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is made on the grounds that the Complaint and each cause of action therein fails to state a claim upon which relief can be granted, are not supported by the facts alleged in the Complaint or the Investment Agreement attached to the Complaint as Exhibit 1.  In addition, this court lacks jurisdiction to adjudicate the Second and Third Causes of Action asserted in the Complaint.

Said motion to dismiss is based on this Notice of Motion, the attached Memorandum of Points and Authorities, such supplemental pleadings that may be filed in the course of this motion, the documents and records on file in this action and on any evidence and argument to be presented at the hearing on this motion.

Respectfully submitted,

DATED: 06/28/2021    ROSHANIAN PAYMAN, PC

By: _____

Tamineh Roshanian, Attorneys for
Defendants EWI Capital, LLC and Zhe Zhang

-2-

## TABLE OF CONTENTS

NOTICE OF MOTION ................................................................ 1, 2

TABLE OF CONTENTS ............................................................. 3, 4

TABLE OF AUTHORITIES ......................................................... 5-7

MEMORANDUM OF POINTS AND AUTHORITIES ...................... 8-32

    I.     INTRODUCTION ........................................................ 8-10

    II.    JURIDICTION AND VENUE ......................................... 10

    III.   PARTIES .................................................................... 10, 11

    IV.   SUBSTANTIVE ALLEGATIONS ................................... 11-20

        A. Contentions that Defendants Breached the Investment Agreement by Failing to Return the HTT Investment Amount to Plaintiffs After the Investment Agreement Is Expired, Is Without Basis. ................................................. 11-15

        B. Plaintiffs' allegations that Defendants Breached the Investment Agreement by Failing to Fulfill Their Obligations as a GP and Failing to Provide Financial Information Relating to the HTT Investment on a Timely Manner, are not actionable under Provision 3.4.3 ............................................... 15, 16

        C. Defendants Failed to Reflect the Ownersbip Change of Edgewater HTT III after Edgewater HTT III Transferred Its HTT Shares to Plaintiff Leo HK ............................................. 16-18

        D. Plaintiffs' Claims of Discovery of Zhang's Conducting Business Fraudulently by Hiding His True Identity and Using Non-Existing Addresses in Corporate Filings, Should Be Ignored, Absent Showing of Malicious Intent, Plaintiffs' Reliance & the Resulting Financial Loss ...................................................... 18-20

    V.    LEGAL ANALYSIS OF PLAINTIFFS' CAUSES OF ACTIONS AGAINST DEFENDANTS ...................................... 21-32

        1. LEGAL STANDARD for MOTION TO DISMISS ................... 21, 22

        2. GOVERNING LAW ....................................................... 22, 23

DEFENDANTS' MOTION TO DISMISS – Case No. 3:21-cv-03985-SK

3. **FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** ………………………………………….. 23-26

    A.  Plaintiffs have failed to show they have performed their obligations under the Investment Agreement ……………….. 23. 24

    B.  Plaintiffs have not met their burden to show Defendants did not perform their obligations under the Investment Agreement …………………………………………………… 24

    C.  Complaint Allegations in ¶37 are Contradictory to Allegations in ¶14, ¶26 & ¶27 ……………………………….. 24, 25

    D.  The only Scenario Under Which Plaintiff Leo ME Would be Entitled to a Refund is Under Provision 2.2.2 ……………... 25, 26

4. **SECOND CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** ………………………………………….. 26-29

5. **THIRD CAUSE FOR FRAUD FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** …………………. 29-32

    A.  Heightened Pleading Standard For Fraud Or Mistake …….. 29, 30

    B.  Elements of Fraud Causes of Action ………………………… 30-32

6. **PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND** ……………………………………………………… 32

7. **ATTORNEYS FEES** ………………………………………….. 32

DEFENDANTS' MOTION TO DISMISS – Case No. 3:21-cv-03985-SK

## TABLE OF AUTHORITIES

**CASES**:

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................ 31

*Bly-Magee v. California*
    236 F.3d 1014 (9th Cir. 2001) ............................................. 31

*CDF Firefighters v. Maldonado*
    158 Cal.App.4th 1226 (2008) .............................................. 23

*Cervantes v. Countrywide Home Loans, Inc.*
    656 F.3d 1034 (9th Cir. 2011). .......................................... 21

*Dahlia v. Rodriguez*
    735 F.3d 1060 (9th Cir. 2013) ............................................ 21

*Ebeid ex rel. United States v. Lungwitz*
    616 F.3d 993 (9th Cir. 2010) .............................................. 30

*Federal Sav. and Loan Ins. Corp. v. Musacchio*
    695 F. Supp. 1053 (N.D. Cal. 1988) .................................... 30

*Hart v. Bayer Corp.*
    199 F.3d 239 (5th Cir. 2000) .............................................. 32

*In re Caremark Intern. Inc. Deriv. Lit.*
    698 A.2d 959 (Del. Ch. 1996) ............................................ 27

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*
    536 F.Supp.2d 1129 (N.D. Cal. 2008) ................................. 31

*In re Miltenberger*
    538 B.R. 547 (Bankr. E.D. Mo. 2015) ................................. 31

*In re Stac Elecs. Sec. Litig.*
    89 F.3d 1399 (9th Cir. 1996) .............................................. 30

*Johnson v. Cty. of Santa Clara*
    No. 5:18-CV-06264-EJD, 2019 WL 1597488 (N.D. Cal. Apr. 15, 2019) ........... 21, 22

*Jones v. Greninger*
    188 F.3d 322 (5th Cir. 1999) .............................................. 32

DEFENDANTS' MOTION TO DISMISS – Case No. 3:21-cv-03985-SK

*Klaxon Co. v. Stentor Elec. Mfg. Co.*
  313 U.S. 487 (1941) ................................................................... 22

*McGhee v. Arabian Am. Oil Co.*
  871 F.2d 1412 (9th Cir. 1989) ..................................................... 23

*McMullin v. Beran*
  765 A.2d 910 (Del. 2000) ............................................................ 27

*Pierce v. Lyman*
  1 Cal. App. 4th 1093 (1991) ........................................................ 27

*Porter v. Jones*
  319 F.3d 483 (9th Cir. 2003) ....................................................... 31

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir. 2007) .................................................... 29-30

*Tenzer v. Superscope, Inc.*
  39 Cal. 3d 18 (Cal. 1985) ........................................................... 30

*The Ravenswood Investment Company LP v. The Estate of Bassett S. Winmill*
  C.A. No. 3730-VCS (Del. Ch. Mar. 21, 2018) ............................... 27

*Taa v. Chase Home Finance, LLC*
  No. 5:11-cv-00554-EJD, 2012 WL 507430 (N.D. Cal., Feb. 15, 2012) ............. 32

*Twombly*
  127 S. Ct. at 1974 ................................................................. 30, 31

*U.S. v. United Healthcare Ins. Co.*
  848 F.3d 1161 (9th Cir. 2016) ..................................................... 30

*Vess v. Ciba–Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) ..................................................... 31

*Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*
  991 F.2d 1501 (9th Cir. 1993) ..................................................... 22

**STATUTES:**

*Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and 28 U.S.C. §1332(d)* ..................... 10

/ / /

/ / /

-6-

**RULES**:

F.R.C.P. 9(6) ................................................................................ 29

F.R.C.P. 12(b)(6) ...................................................................2, 31, 32


**OTHER AUTHORITIES**:

Delaware Corporation Code § 18-301 ................................................. 28

https://delawarebusinesstimes.com/sponsored-content/bizinsights/add-remove-members-delaware-llc/.......................................................................................... 17

http://delcode.delaware.gov/title6/c018/sc03/index.html).................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Complaint against Defendants EWI Capital LLC ("EWI Capital") and Zhe Zhang ("Zhang") is for breach of contract, breach of fiduciary duty and fraud causes of action. Plaintiffs request this Court to order Defendants to return to Plaintiffs $5 Million in investment they have made in Edgewater HTT III, LLC ("Edgewater HTT III") which used the whole $5 million amount to purchase $5 Million worth of shares of Hyperloop Transport Technologies ("HTT) in December 2017.  The Complaint alleges that Edgewater HTT III's control was transferred by Defendant EWI Capital to Plaintiffs in November 2018.

Plaintiffs' demand for return of their $5  million investment in HTT shares ("HTT Investment") are based on misinterpretation of the terms of the Investment Agreement entered between Plaintiff Leo Middle East FZE ("Leo ME"), Edgewater HTT III, and Defendant EWI Capital, LLC ("EWI Capital") dated September 1, 2017, a copy of which is attached to the Complaint as Exhibit 1.  The alleged factual basis stated to support the demand for the return of the HTT Investment are:

(a) The Investment Agreement expired in December 2020 and EWI Capital failed to renew the term for another one year, thus terminating the Investment Agreement under Clause 3.6.2., as a result of which Plaintiffs are entitled to the return of their money by Defendants under Clause 3.11, and that Defendants have refused to return the money and thus are in breach of the Investment Agreement.

(b) Defendants failed to provide timely quarterly reports on the Investment Fund in breach of the Investment Agreement, that they failed to set up appropriate structure to protect Plaintiffs' assets, that Defendant Zhang failed to register the change of ownership of Edgewater HTT III with the Secretary of State of Delaware, and that such failure to act somehow amounted to breach of contract, breach of fiduciary duty, and fraud by Defendants.

The Complaint also alleges that there were mistakes in the documents, including the Transfer Agreement, that Defendant Zhang had used different spelling of his name in Chinese, and his address in different documents for other corporate filings do not exactly match.

-8-

Plaintiffs allege these mistakes and inconsistencies as well as some other minor infractions amount to actionable fraud and breach of fiduciary duty by Defendants against Plaintiffs without alleging they relied on any specific misconduct by Defendants which led Plaintiffs to suffer a financial loss, which they would have not suffered otherwise.

However, the facts alleged in the Complaint do not state a claim upon which relief can be granted for the three causes of actions raised in the Complaint, for the following reasons:

a. The Complaint fails to show Plaintiffs have suffered any damages as a result of Defendants' alleged conduct or failure to act.

b. Plaintiffs fail to describe the basis on which they contend damages should be calculated if liability is established.

c. Plaintiffs have failed to allege sufficient facts or state sufficient legal basis which support judicial relief on the raised causes of actions for breach of contract, breach of fiduciary duty and civil fraud under Federal Rules of Procedure and applicable case law.

d. Plaintiffs have failed to raise any legal theory or cause of action under which they are entitled to any relief without showing of loss or damages or violation of their rights under the US Constitution, or Federal law.

e. The resolution of fraud and breach of fiduciary duty are explicitly subject to exclusive jurisdiction of Hong Kong International Arbitration Court under Clause 3.4.3 of the Investment Agreement and this court lacks jurisdiction to adjudicate Second and Third Causes of Action.

f. Although the whole Investment Agreement is subject to Hong Kong International Arbitration Court jurisdiction under Clause 4.3, Defendants will waive arbitration in regard of the claim for breach of contract as they wish to file a counterclaim against Plaintiffs in this court for Plaintiffs' failure to pay EWI Capital's management fees in breach of the Investment Agreement.

g. Plaintiffs have admitted that they have owned the HTT Investment through Edgewater HTT III since November 2018. There is no allegation in the Complaint that Defendants have retained or withheld any part of the initial HTT

-9-

Investment fund for their own benefit and enrichment, in order for the court to make an order for its return.

h. Plaintiffs have not pleaded restitution of any legally retained or withheld money by Defendants.

i. Plaintiffs have not pleaded that they have tried to sell the HTT shares but failed to do so because of any action or failure to act by Defendants, and as a result they suffered a financial loss.

j. The Complaint is, therefore, frivolous, and must be dismissed without leave to amend.

## II.    JURISDICTION AND VENUE

Clauses 3.4.3 and 4.3 of the Investment Agreement attached to the Complaint as Exhibit 1, provide for arbitration of disputes in Hong Kong International Arbitration Court ("HKIAC") under Hong Kong law and not the US Federal or California State law. This Court does not have jurisdiction over the Complaint under *Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and* 28 U.S.C. §1332(d). However, by filing the Complaint in this court, Plaintiffs have waived their right to arbitration in Hong Kong and have consented to the jurisdiction of this case. The requirement of minimal diversity is not met as Plaintiffs have failed to show they suffered any damages that exceed the amount of $75,000, exclusive of interest and costs. Defendants agree that the dispute is between citizens of a state and a citizen of a foreign state. *See* 28 U.S.C. § 1332(d)(2).

Although, Zhang is a resident of San Mateo County. EWI Capital is registered to conduct business in the state of Delaware. The Complaint does not provide any evidence of EWI Capital's sole ownership by Zhang (which is not true) and its conducting business in San Mateo County.

## III.    THE PARTIES

The Complaint alleges that Defendant EWI Capital, LLC ("EWI Capital") is a company registered in the State of Delaware and its sole member is Zhang, without stating the basis for its assertions. EWI Capital has two members, and Zhang is not the sole member.

The Complaint alleges that Plaintiffs Leo Middle East FZE ("Leo ME") is an entity registered to conduct business in the United Arab Emirates ("UAE") (¶5) and that Plaintiff Leo Holdings Hong Kong Limited is an entity registered to conduct business in Hong Kong, China ("Leo HK"). It is further alleged that "Zhejiang Leo (Hongkong) Ltd." ("Zhenjiang Leo") changed its name to Leo Holdings Hong Kong Limited in March 2021 (¶6) and that Leo HK and Leo ME are affiliated entities (¶7).

No evidence of Zhejiang Leo's change of name to Leo HK has been provided in the Complaint. Leo HK has no standing to sue Defendants as it was not a party to the Investment Agreement attached to the Complaint as Exhibit 1.

## IV.   SUBSTANTIVE ALLEGATIONS

### A. Contentions that Defendants Breached the Investment Agreement by Failing to Return the HTT Investment Amount to Plaintiffs After the Investment Agreement Is Expired, Is Without Basis.

¶11 Complaint alleges that on or around July 26, 2017, Edgewater HTT III , an entity controlled and managed by "Defendant Zhang", purchased 1,428,571 shares of Series A Preferred Stock of Hyperloop Transportation Technologies, Inc. ("HTT"), and that "Defendant Zhang" signed the Series A Preferred Stock Purchase Agreement with HTT on behalf of Edgewater HTT III. ¶12 alleges that on or around September 1, 2017, Plaintiff Leo ME, Edgewater HTT III and Defendant EWI Capital executed an Investment Agreement, in which Plaintiff Leo ME agreed to purchase the 1,428,571 shares of Series A Preferred Stock of HTT for $5 million (the "HTT Investment"), and that the parties further agreed that Plaintiff Leo ME would act as a Limited Partner and Defendant EWI Capital would act as a General Partner ("GP") to actively manage the HTT Investment.

A review of the Investment Agreement, Exhibit 1 to Complaint, show that Zhe Zhang signed the Agreement on behalf of EWI Capital and Kaifeng Xu on behalf of Leo ME, Edgewater HTT III is not a signatory to the Investment Agreement. Therefore, the Investment Agreement was made only between Leo ME and EWI Capital. The Complaint alleges that

Edgewater HTT III was transferred to Zhejiang Leo (Leo HK). Neither of these companies were signatory to the Investment Agreement and have no standing to sue.

Although, Page 1 of the Investment Agreement refers to "EdgeWater" (Edgewater HTT III) as a Party, the Investors and Leo ME are collectively referred as the "Parties" In the Recital section, and it is stated that the "GP should assist to provide the updated shareholder list and investment percentages".

Provision 2.2.3 states

> "[a]fter the consummation of the Proposed Investments, the Investors shall become shareholder of the Target Company [HTT] by indirectly holding the shares of EdgeWater."

Therefore, the Plaintiffs ,and not the Defendants ,were the shareholders of Edgewater HTT III.

¶13 alleges that Provision 3.1 of the Investment Agreement states that the term of the HTT Investment shall be three years and that that Defendant EWI Capital may choose to extend the investment term twice, each with a one-year extension.

¶14 alleges that Plaintiff Leo ME transferred $3 million to "Defendants" on or around September 23, 2017, that Defendants received this amount on or around September 26, 2017, that Leo ME transferred an additional $2 million to "Defendants" on or around December 28, 2017, and that "Defendants" received this amount around the same time, thus calculating the term of the Investment Agreement to start on December 28, 2017. ¶14 does not specify to which bank account and in whose name Leo ME transferred each of the $3 million and $2 million and how the money was transferred. Was it Defendant Zhang's personal bank account, Edgewater HTT III's bank account or EWI Capital's bank account?

Provision 2.1 of Investment Agreement, in fact, states that each investor shall contribute the Investment Amount to the account designated by Edgewater HTT III (and not  to the Defendants). Provision 2.2.1 states Edgewater HTT III and not the Defendants invest $5 million in HTT:

> "Upon receipt of all the payment by Investors, EdgeWater shall immediately transfer the funds to the account of HTT's bank account."

Provision 3.4.6 states that the monies should be transferred to Edgewater HTT III's bank account at Bank of America, and also states:

> *"The Investors shall make sure their prescribed funds go to the account designated by EdgeWater in a timely manner as per the Agreement..."*

Plaintiffs have failed to describe the bank account(s) to which they paid the $5 million investment and whether these were the bank accounts of the Defendants and whether the Defendants have retained all or part of the original $5 million investment, which they now refuse to return to Plaintiffs.

Moreover, ¶15 alleges that Plaintiffs did not receive any notification from Defendants that they elected to extend the term of the Investment Agreement for one year by December 2020, and that the term of the Investment Agreement expired on December 27, 2020. They allege in ¶16 that Provision 3.6.2 of the Investment Agreement lists a few scenarios under which the HTT Investment shall be terminated, including when the three-year term is expired, in which case they conclude after the Investment Agreement is terminated, the entire investment amount shall be returned to Plaintiff sunder Provision 3.11of the Investment Agreement.

¶17 alleges that on January 25, 2021, Plaintiffs wrote to Defendants, demanding for a return of the HTT Investment. A copy of this demand letter and the Defendants' response has not been attached to the Complaint and Plaintiffs fail to describe how the Defendants responded other than saying "Defendants have not returned the HTT Investment amount to Plaintiffs" and in ¶18, they say Defendants owe Plaintiffs $5 million.

Plaintiffs have failed to demonstrate that they paid $5 million to Defendants which Defendants retained for their own benefit, that they have been unjustly enriched, and that they must be ordered by this court to return the money to Plaintiffs. Absent such allegations, the Court must dismiss the Complaint for failure to show any damages.

Furthermore, Plaintiffs have misstated and misconstrued these and other Provisions of the Investment Agreement. Provisions 3.6.2 and 3.11 do not give Plaintiffs the right to demand the return of their original $5 million HTT Investment.

Provision 3.6.2 states:

*"The Fund may be terminated in one of the following cases:*
    *(a)     The Fund's objective has been achieved or cannot be achieved;*
    *(b)     (2) Term of the Fund Expires;..."*

Provision 3.11. states:

*"When the Fund ends, the principal and margin shall be paid to each investor in form of bonus. The margin shall be distributed as below: the GP and the Investors share the cash to be distributed after capital contribution refund by 20% to 80%. The principal and margin shall be paid to the Investor's account ..."*

Clause 3.3. describes GP's share of the margin as Carried Interest:

*"Carried Interest: Distributable Cash shall initially be appropriated among the Partners in proportion to their respective Percentage Interest. The GP will be entitled to 20% of total Investment net income as Carried Interest."*

Provision 3.6.1 states:

*"The Investors shall not change, dismiss, revoke or terminate the Fund since the Fund was founded unless specified in this Agreement."*

Provision 3.9 states:

*"The Investor or EWI shall strictly follow the Agreement, breach of which will result in liability and compensation for the loss of the non-defaulting parties."*

Provision 3.5.7 states:

*"EWI shall compensate the Investors for breach of the agreement purpose, management duty and significant misconduct of other affairs that lead to loss of investment"*

Provision 3.4.3 defines "significant misconduct" as follows:

*"In case the GP breaches the Agreement  purpose or commits significant misconduct in his management or dealing with regular affairs (Significant Misconduct hereto refers to serious neglect, material breach of the Agreement, fraud, serious violation of the valid laws regarding securities. It excludes minor neglect, provision of information to LP, or any conduct or non-conduct considered as goodwill based on the Fund Partnership Agreement), causing financial loss of the Fund Investment, the Investors may submit the case to the Hong Kong International Arbitration Center and claim for compensation." [emphasis added]*

-14-

Provision 3.5.2 exempts EWI Capital III from responsibility in case EWI faces a claim, lawsuit, arbitration, investigation or other legal proceedings, if such action is not caused by their intentional or significant misconduct.

> "…In such a case, the Fund shall bear all the losses and expenses. Those to be exempted include the GP, senior management, employees, and representatives of EdgeWater(Delaware) (and relevant personnel)."

The Complaint has failed to allege that any conduct or failure to act of Defendants are "**Significant Misconduct**" as defined in Provisions 3.4.3 & 3.5.7, and that they suffered any financial loss as a result of such Significant Misconduct or breach of contract. Failure to provide timely or quarterly financial reports is expressly excluded from liability as minor neglect under 3.4.3.

Moreover, Plaintiffs have failed to allege facts showing that they strictly performed all their own obligations under Provision 3.9 of the Investment agreement, including payment of EWI Capital's 2% management fee (Provision 3.2) and its legal and running costs (Provision 3.4 & Appendix), or explain why they requested Plaintiffs in February 2018 (¶26) to transfer the management and voting control of Edgewater HTT III (holding HTT Investment) to Plaintiff Leo HK (who was the LP), before the expiry of the term of the Investment Agreement, which was in violation of Provision 3.6.1. Additionally, the Complaint does not allege anywhere that Defendants have refused to transfer the ownership, management or control of Edgewater HTT III/HTT Investment to Plaintiff Leo HK, or that they still control and manage the HTT Investment, thereby causing a financial loss to Plaintiffs.

**B. Plaintiffs' allegations that Defendants Breached the Investment Agreement by Failing to Fulfill Their Obligations as a GP and Failing to Provide Financial Information Relating to the HTT Investment on a Timely Manner, are not actionable under Provision 3.4.3**

¶19 alleges that "*Provision 3.4.1 of the Investment Agreement states that Plaintiff Leo ME shall be entitled to obtaining information relating to its HTT Investment, including but not limited to, financial and operation status of HTT. Provision 3.4.2 states that Plaintiff Leo ME has a right to inspect financial information relating to the HTT Investment periodically. The*

*Chinese transaction of this Provision states that Defendant EWI Capital shall carry out this duty on a quarterly basis."*   In ¶20, Plaintiffs quote Provision 3.5.5 (and not Provision 3.9) which states that, as a GP, Defendant EWI Capital *"must strictly fulfill the duty and obligations in an honest, faithful, cautious and effective manner"*. They further quote provision 3.7.2 in ¶21 which state *"'within 5 working days' from the set up of the HTT Investment, Defendant EWI Capital shall disclose information relating to HTT to Plaintiff Leo ME. Defendant EWI Capital shall also compile and provide to Plaintiff Leo ME a "Fund management report" on a regular basis. The Chinese transaction of this Provision states that Defendant EWI Capital shall carry out this duty on a quarterly basis."*

In ¶¶22-25, the Complaint alleges that after Plaintiff Leo ME transferred the $5 million HTT Investment to Defendants in December 2017, Plaintiffs made regular inquiries for the financial and operation status of HTT but Defendants failed to provide such information except in November 2018 and February 27, 2019, when Defendant Zhang sent Plaintiffs HTT's financial statement and Post Investment Report. They charge Defendants did not answer numerous inquiries from Plaintiffs regarding providing such information.

Assuming that all of the above allegations are true (which Defendants dispute), Provision 3.4.3 *excludes minor neglect, provision of information to LP, or any conduct or non-conduct considered as goodwill based on the Fund Partnership Agreement.* It must be noted that Under Provision 3.8, Leo ME assumed the full risks of investing in HTT shares through Edgewater and control risks. In Provision 3.8.2, it is acknowledged that EWI Capital does not provide commitment to profits or loss of managing, operating and executing Fund's program (Edgewater's HTT shareholding). There is no basis for Plaintiffs to sue EWI Capital if HTT investment proves to be unprofitable or produces a loss in the future when the HTT shares are sold by Plaintiffs.

### C. Defendants Failed to Reflect the Ownership Change of Edgewater HTT III after Edgewater HTT III Transferred Its HTT Shares to Plaintiff Leo HK

Plaintiffs allege in ¶26 that *"[A]fter the parties signed the Investment Agreement on September 1, 2017, the HTT Investment was held by Edgewater HTT III. Therefore, in or*

*around February 2018, Plaintiff Leo ME requested Defendants to transfer the HTT Investment to its affiliated entity, Plaintiff Leo HK."* In ¶26, it is alleged that *"[D]ue to delays of Defendants, Edgewater HTT III did not sign a Transfer Agreement with Plaintiff Leo ME until November 22, 2018, in which it formally transferred the HTT Investment to Plaintiff Leo ME."*

The Complaint alleges in ¶27 *"[A]s the HTT Investment was the only asset held by Edgewater HTT III, Defendants should file relevant documents with the State of Delaware to reflect the ownership change of Edgewater HTT III after the execution of the Transfer Agreement. However, as of the date of this filing, Defendants have failed to do so. Defendants also insisted that Defendant EWI Capital shall retain the voting rights of the HTT Investment."* Plaintiffs allege in ¶28 that *"[N]ot only Defendants failed to set up an appropriate structure to protect Plaintiffs' assets immediately after Plaintiff Leo ME made the HTT Investment, they also did not reflect the ownership change of Edgewater HTT III timely."*

In ¶26 & ¶27, Plaintiffs have indirectly admitted that Defendants transferred the ownership, management and control of both Edgewater HTT III and HTT Investment to Plaintiff Leo ME in November 2018. The Complaint fails to describe which provision of the corporate laws of the State of Delaware require Defendants to register with the Secretary of State of Delaware the change of ownership of Edgewater HTT III. The reason is that there is no such requirement under the Delaware law (see https://delawarebusinesstimes.com/sponsored-content/bizinsights/add-remove-members-delaware-llc/)

Delaware Corporation Law, § 18-301 governs Admission of members in limited liability companies. It states a member is admitted into an LLC by consent of the members under the LLC Agreement. (see http://delcode.delaware.gov/title6/c018/sc03/index.html). There is no requirement for registration of change of membership with the Secretary of State.

Without describing what the appropriate corporate structure is which Defendants failed to establish, what was the delay or the cause thereof in transferring the ownership of HTT Investment to Plaintiffs, the allegations in ¶28 are so vague that Defendants don't know how to answer. In any event, Provision 3.6.1, precluded Plaintiff Leo ME to revoke or terminate the Investment Agreement before its term expiry. Plaintiffs admit the Investment Agreement expired in December 2020 (see ¶15). It was they who breached Provision 3.6.1 by requesting

-17-

early transfer of the Investment Fund. There is no actionable delay against Defendants under the Investment Agreement.

**D. Plaintiffs Claims of Discovery of Zhang's Conducting Business Fraudulently by Hiding His True Identity and Using Non-Existing Addresses in Corporate Filings, Should Be Ignored, Absent Showing of Malicious Intent, Plaintiffs' Reliance & the Resulting Financial Loss.**

In ¶30, Plaintiffs allege that after Defendants failed to return the $5 million HTT Investment to Plaintiffs pursuant to the terms of the Investment Agreement, Plaintiffs became suspicious regarding Defendant Zhang and conducted an investigation against Defendant Zhang. They alleged in ¶31 & ¶32 that they discovered Defendant Zhang registered several business entities in the State of Delaware and in the State of California and used the following address in several corporate filings: 110 Blythe Street, Foster City, CA 94404 which they say does not exist, and that he used a different address for some other filings. However, they fail to allege that it was Defendant Zhang, rather than a clerk or paralegal at a law firm, who incorporated these companies, and that Zhang intentionally misstated the address[1], and that he did so with the intention to deceive and defraud the investors. No information is provided as which period the different addresses were used by each entity and whether Zhang failed to explain the reasons in pre-action correspondence. There is no allegation that Mr. Zhang did not live at or was in control of the addresses used as registered address during incorporation of each entity. The Complaint does not list the name of the companies that allegedly used non-existing or false addresses. Defendant Zhang cannot possibly answer such vague allegations.

Even if the Complaint is amended to specify the name of the entities using the wrong addresses, (be it due to a mistake by Zhang or a third party, or whether allegedly done intentionally or unknowingly) such did not cause any damages or loss to Plaintiffs and they have no standing to sue Plaintiffs for damages for such non-consequential mistakes which are referred to as minor neglect under Provision 3.4.3 of the Investment Agreement.

---

[1] Apparently, there was a "1" missing from the Street address in 1 or 2 corporate filings.

DEFENDANTS' MOTION TO DISMISS – Case No. 3:21-cv-03985-SK

In ¶33, Plaintiffs allege that they have noticed that Defendant Zhang writes his first name in Chinese character in two different ways: 哲 or 喆, and that changing the Chinese character for the first name means to have a completely different name. Assuming this is true, Plaintiffs have failed to show which character was used in which Agreement and whether they suffered a loss from Zhang's use of the wrong character in his Chinese name. The Investment Agreement is written in both English and Chinese. There is no allegation that the English name is incorrect.

From the above allegation, Plaintiffs conclude in ¶34 that they believe that Defendant Zhang conducted the HTT Investment fraudulently for the following reasons: (1) Defendant Zhang set up Edgewater HTT III to hold the HTT Investment and controlled Edgewater HTT III until Plaintiffs repeatedly demanded Defendant Zhang to transfer the HTT Investment to Plaintiff Leo HK[2]; (2) Even after the HTT Investment was transferred to Leo HK, Defendant Zhang refuses to reflect the ownership change of Edgewater HTT III with the State of Delaware[3] and insists on keeping the voting rights for the HTT Investment; (3) Defendant Zhang consistently uses different names and fake addresses in public records and in his communications with Plaintiffs[4]; and (4) Defendant Zhang made material mistakes in his business dealing with Plaintiffs. Plaintiffs allege in ¶34:15-20:

> "For example, after Defendants transferred the HTT Investment from Edgewater HTT III to Plaintiff Leo HK upon Plaintiffs' demand, Plaintiffs asked Defendants to provide a legal opinion regarding the validity of the asset transfer. Defendant retained an attorney from Winston & Straw to provide a legal opinion. However, the name of the entity as referred in the legal opinion is incorrect, therefore, render the legal opinion useless. "

Plaintiffs have failed to describe the incorrect name used in the legal opinion, have failed to attach the legal opinion to the Complaint, and have failed to allege that the law firm of

---

[2] As stated above, Provision 3.6.1 precluded Plaintiff Leo ME to revoke or terminate the Investment Agreement before its term expiry. The Purpose of the Investment Agreement was for EWI Capital as GP to manage Edgewater HTT III and HTT Investment.

[3] As stated above, there is no such requirement under the Delaware law.

[4] Plaintiffs fail to describe the fake names and addresses and the dates and circumstances they were used and how such were done with the intention to defraud Plaintiffs.

Winston & Straw knowingly and intentionally used the incorrect name of the entity in its legal opinion and it did so at the direction of Defendant Zhang, with the intention to defraud Plaintiffs. If so, Plaintiffs must amend the Complaint to add such allegations; then they must add Winston & Straw as a Defendant to the Complaint and to add a further cause of action for conspiracy to defraud Plaintiffs by Defendant Zhang and Winston & Straw. Further, they failed to allege that they suffered financial losses as a consequence of such fraudulent conspiracy or conduct. The fact that Plaintiffs have not done so, is because they know they have no factual cause to make baseless allegations against a national law firm for non-consequential mistakes made in its documentation, if any.

In ¶35, Plaintiffs allege that

> "*Defendant Zhang did not set up an adequate structure to protect Plaintiffs' legal interest at the beginning of this business[s] dealing. After Plaintiffs demanded for an adequate protection, Defendant Zhang insists on keep the voting rights for the HTT Investment and refuses to reflect the ownership change of Edgewater HTT III. Although the Investment Agreement has been expired for more than three months, Defendants refuse to return the $5 million HTT Investment to Plaintiffs pursuant to the terms of the Investment Agreement. The above-stated facts, combined with Defendant Zhang's intentionally hiding his identity and using a non-existing address, show that Defendant Zhang has committed fraud in conducting business dealing with Plaintiff.*"

The allegations of ¶35 are conclusory, vague and baseless. Plaintiffs do not describe the adequate structure under the Delaware law or the Investment Agreement which Defendants failed to provide, or how the Defendants violated their legal obligations under the Delaware Corporate law or Hong Kong law (the governing law of the Investment Agreement). They also fail to describe the fraudulent acts committed by Defendant Zhang in his dealings with Plaintiff, and how such acts or failure to act caused a financial loss to Plaintiffs, as required under Provisions 3.5.7 and 3.4.3 of the Investment Agreement. These allegations are so frivolous and baseless that Defendants are at a loss how to answer. Plaintiffs' innuendos and conclusory, but unsubstantiated, allegations of fraud, has a real negative and damaging impact on Zhang's reputation in the investment community and must be dismissed for lack of probable cause and malice.

## V.    LEGAL ANALYSIS OF PLAINTIFFS' CAUSES OF ACTIONS AGAINST DEFENDANTS

### 1.  LEGAL STANDARD for MOTION TO DISMISS

*"Under Federal Rule of Civil Procedure 8(a)(2), '[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.' Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) test the sufficiency of this required showing. New Mexico State Investment Council v. Ernst & Young LLP, 641 F.3d 1089, 1094 (9th Cir. 2011). 'Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory'"" Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1041 (9th Cir. 2011).

*"A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In considering whether the complaint is sufficient to state a claim, the court accepts as true all factual allegations contained in the complaint. Id. However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Id. "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." Dahlia v. Rodriguez, 735 F.3d 1060, 1076 (9th Cir. 2013).*

In this case, the allegations of the Complaint, as shown above, are conclusory, unwarranted deductions of fact, or unreasonable inferences, and are contradictory. The facts alleged do not give rise to any actionable causes of actions against Defendants under the terms of the Investment Agreement. Plaintiffs have not shown they have suffered any loss or damage, or that Defendants have retained or withheld Plaintiff's original investment money for themselves.

Although the Court will draw reasonable inferences in Plaintiff's favor at this stage, it cannot read missing allegations into the complaint. *Johnson v. Cty. of Santa Clara*, No. 5:18-CV-06264-EJD, 2019 WL 1597488, at *3 (N.D. Cal. Apr. 15, 2019) ("[A] complaint may not

be amended by briefs in opposition to a motion to dismiss.") (quoting *Barbera v. WMC Mortg. Corp.*, 2006 WL 167632, at *2 n. 4 (N.D. Cal. Jan. 19, 2006)).

In analyzing the allegations of the Complaint line by line in the foregoing, Defendants have pointed out in each instance what allegations are missing which would be essential for Plaintiffs to show probable cause on their action. First and foremost of missing allegations is the Plaintiffs' failure to describe if, whether, and how Defendants have retained any part of the $5 million being demanded back for Defendant's own personal benefit and gain, on all three causes of action. Plaintiffs have not pleaded restitution or unjust enrichment, a legal requirement for demanding return of money. The second glaring missing allegations relate to the showing intentional acts of deceit or breach of fiduciary duty or Significant Misconduct on part of Defendants which have caused Plaintiffs financial loss. Plaintiffs cannot just make self-serving conclusory statements based on their misreading the Investment Agreement and ignorance of the Delaware corporate law to demand return of the Investment Money which were used to buy the HTT Shares, which have been under their sole control and ownership since November 2018, as alleged in the Complaint. They have not shown they have suffered any damages at all even if all of the allegations of the Complaint are true. Indeed, the whole Complaint appears to be about unjustly enriching the Plaintiffs, because if they succeed to get a judgement in their favor, as owner of the HTT shares, they can still sell the shares for $5 million or more, potentially doubling their money, all without paying Defendants' management fees or Carried Interest profit margin share. Such an outcome is simply unequitable.

## 2. GOVERNING LAW

A federal court sitting in diversity applies the choice-of-law rules of the forum state, here, California. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1506 (9th Cir. 1993). California courts use "governmental interest" analysis to determine which jurisdiction's law to apply. *Id.* Presumptively, California law applies; a California court will use the law of another jurisdiction only if a party shows that the law of that other jurisdiction is materially different from California law and that the other jurisdiction has a greater interest in having its law applied than

does California. *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989). Plaintiffs do not in their complaint state what law should be applied for interpretation of the Investment Agreement or the resolution of this dispute.

### 3. FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

*"To prevail on a breach of contract claim Plaintiffs must prove the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach".* See *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008).

Plaintiffs in this case have failed to allege sufficient facts to prove three of the four above requirements. Plaintiffs have attached the Investment Agreement to the Complaint, thus proving its existence. Plaintiffs have failed to describe their own strict performance of the Investment Agreement as required under Provision 3.9 and whether they were excused from paying defendants' management fees and legal costs. Plaintiffs have also failed to show the facts described in ¶11-¶35 of the Complaint amounted to Significant Misconduct or breach of the Agreement purpose (which was purchase of HTT Shares by Edgewater HTT III). Plaintiffs have also failed to show they suffered any loss or damage due Defendants alleged breach of contract. Plaintiffs are already in control and possession of the HTT Investment through their ownership and control of Edgewater HTT III. There are no allegations in the Complaint that Defendants retained some or all of the $5 million for their own benefit or that somehow they, and not Plaintiffs, control HTT Investment. To require Defendants to return the $5 million used by Edgewater HTT III to purchase the HTT Shares for the benefit of the Plaintiffs, is unconscionable as it would result in unjust enrichment of the Plaintiffs. As stated above, there are no losses here.

### A. Plaintiffs have failed to show they have performed their obligations under the Investment Agreement

If Plaintiffs are given leave to amend the Complaint to plead that they have fully performed their obligations under the Investment Agreement, they would have to disclose that

-23-

they only paid the first year's management fee after 12 months delay and never paid the next two years' management fees, and have failed to reimburse Defendants' legal costs in breach of the Investment Agreement, and the fact that the alleged documentation delays were caused by their own failure to pay the running costs. Defendants cannot see any circumstances under which Plaintiffs can prevail if they cannot prove damages.

**B. Plaintiffs have not met their burden to show Defendants did not perform their obligations under the Investment Agreement**

Based on the allegations of the Complaint, the Investment Agreement has been fully performed by Defendants in that (1) Plaintiffs' Investment Fund was used to purchase the HTT Shares by Edgewater HTT III (transfer of $5 million to HTT under Provision 2.2.1),  (2) Plaintiffs, and not Defendants,  control and manage both Edgewater HTT III and HTT Investment held by it since November 22, 2018, (3) The Investment Agreement was terminated by Plaintiffs in November 2018 when they took over the management and control of Edgewater HTT III  and HTT Investment (Provision 3.6.2), and (4) the Investment Fund was used to purchase the HTT Shares, which means Defendants have not retained any portion of the $5 million Investment Fund for their own benefit or enrichment (no damages).

**C. Complaint Allegations in ¶37 are Contradictory to Allegations in ¶14, ¶26 & ¶27**

¶37:8-12 alleges:

> "... Plaintiff transferred $5 million to Defendants to purchase the HTT Investment from Edgewater HTT III. However, Defendants materially breached the Investment agreement by failing to return the HTT Investment to Plaintiff upon the expiration of the Investment Agreement and by failing to provide Plaintiff financial and operation of HTT on timely manner."

The above allegations are directly contradictory to the factual allegations pleaded in ¶14, ¶26 & ¶27 and Provision 2.2.1, 2.2.2 &3.4.6 of the Investment Agreement. ¶14 alleges Plaintiff Leo ME transferred $3 million on September 26, 2017, and $2 million on December 28, 2018, to Defendants without specifying the bank account name and details to which these funds were transferred.    Provision 2.2.1, 2.2.2 of the Investment Agreement, which was dated September 1, 2017, clearly state that Leo ME was obliged to transfer the $5 million Investment Fund to Edgewater HTT III designated account xxxxx9359 at Bank of America as specified in Provision

-24-

3.4.6 to invest in HTT shares within 30 days of receipt of the money. Plaintiffs admit in ¶26 & ¶27 in which Plaintiffs admit that the $5 million was used to purchase the HTT Investment, which is held by Edgewater HT III, whose control has been transferred to Plaintiffs since November 22, 2018. Plaintiffs fail to explain why they transferred the $5 million to Defendants and to which Defendant's bank account.

In contradiction to allegations of ¶26 & ¶27, Plaintiffs claim in ¶37 that Defendants' breach caused a loss of at least $5 million to Plaintiff, without alleging that Defendants have retained the control of the HTT Investment or the proceeds thereof.

**D. The only Scenario Under Which Plaintiff Leo ME Would be Entitled to a Refund is Under Provision 2.2.2**

The only scenario under which Plaintiffs would be entitled to refund of their initial $5 million HTT Investment is described in Provision 2.2.2 of the Investment Agreement which requires Edgewater HTT III to return the HTT Investment back to Leo ME if it fails to purchase the HTT Shares within 30 days of receipt of the money from Leo HK. Clause 3.6.2 (a) allows for termination of the Fund once the Fund's objective has been achieved (purchase of $5 million HTT shares by Edgewater HTT III). In ¶26, Plaintiffs allege that they demanded from Defendants to transfer control of Edgewater HTT III to them in February 2018, without terminating the Investment Agreement. ¶27 alleges Edgewater HTT III was transferred to Plaintiffs in November 2018. There is no right to return or refund of the original $5 million investment under any other provision of the Investment Agreement. Plaintiffs' reliance on Provisions 3.6.2 and 3.11 to demand the return of the money is without basis as Provision 3.11 only deals with the cash distribution derived from payment of <u>dividends or sale of the HTT Investment by Edgewater HTT III</u> (and not Defendants) to third parties.

Appendix of the Investment Agreement provides that EWI Capital or its appointed representative will be the manager of Edgewater HTT until its expiry term and the management term is for 3 years subject to two consecutive, one year term extension at the election of EWI Capital. Under Clause 3.11, when the Fund ends, principal and margin shall be distributed between Edgewater and EWI in an 80% and 20% split. The Fund would only have Principal and Margin to

distribute if Edgewater HTT III sells the HTT shares within the term of the Investment Agreement for a profit or HTT pays dividends.

There is no probable cause for any of Plaintiffs' cause of action for breach of contract and cannot possibly cure the above-mentioned deficiencies by amending the Complaint.

### 4. SECOND CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs' Second Cause of Action for Breach of Fiduciary does not state which substantive law applies to Defendants' alleged breach of duty. Is it the Hong Kong law (as provided in Clause 3.4.3 & 4.3? Is it California law because the action is brought in Northern District Court? Or is it the law of Delaware, the State of incorporation of both EWI Capital and Edgewater HTT III.

In ¶40 of the Complaint, Plaintiffs allege that Defendants owed a fiduciary duty to Plaintiff (without stating which of the two Plaintiffs) pursuant to the Investment Agreement and that fiduciary care is applicable to persons and entities managing a limited liability company and its assets. The Investment Agreement is subject to Hong Kong law but Plaintiffs have not stated which statute or provision of Hong Kong law applies. However, since Edgewater HTT III was incorporated in the State of Delaware, Defendants accept that the Delaware law applies to the management and conduct of an LLC company, which does impose a fiduciary duty on the members of an LLC.

Plaintiffs further allege in ¶41-¶44 that (1) As GP of the HT Investment[5] and the sole owner of EWI Capital[6], Defendants are duty bound to act with utmost good faith for the benefit of Plaintiff, a passive investor, and that Plaintiff (it does not say which Plaintiff) made the investment in reliance on professional skills and integrity of Defendants who can take no advantage from their acts relating to interest of Plaintiff without Plaintiff's knowledge or consent, and that Defendants refused to return the HTT Investment upon repeated requests

---

[5] This is false as the Investment Agreement states EWI Capital (and not Zhang) is the GP of Edgewater HTT III and not HTT Investment.

[6] This is also false as EWI Capital has two members a fact known to Plaintiffs.

without a valid reason and failed to provide relevant information of HTT to Plaintiff on a timely manner. They say this is contrary to the interest of Plaintiff and Defendants' misconduct caused damage to Plaintiff by *"depriving Plaintiff's right to the HTT Investment amount that should be returned…"*

The elements of the cause of action for breach of fiduciary duty under California law are (1) "the existence of a fiduciary relationship," (2) breach of that fiduciary relationship, and (3) "damage proximately caused by that breach." *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991).

Under Delaware law, the elements are that 1) a fiduciary duty exists, and 2) such duty was breached. This was demonstrated in *The Ravenswood Investment Company LP v. The Estate of Bassett S. Winmill*, C.A. No. 3730-VCS (Del. Ch. Mar. 21, 2018). However, in that case the court only awarded nominal damages to Plaintiffs, as Plaintiffs still had to prove they suffered actual damages or that an equitable remedy would be appropriate.

Delaware law provides that corporate officers and directors owe the corporation a triad of fiduciary duties: loyalty, good faith, and due care. *McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000). To state a claim for breach of fiduciary duty, a plaintiff may allege that the officers and directors of a company knew or should have known that violations of the law were occurring, that they took no good faith steps to ameliorate the situation, and that the company suffered losses as a result. *In re Caremark Intern. Inc. Deriv. Lit.*, 698 A.2d 959, 971 (Del. Ch. 1996) 2 (stating that liability may be based upon either an ill-advised or negligent decision, or an unconsidered failure to act when due attention would arguably have prevented the loss).

Plaintiffs have failed to state a claim for breach of fiduciary duty, as they have not alleged the officers and directors of Edgewater HTT III or EWI Capital knew or should have known that violations of the law were occurring, that they took no good faith steps to ameliorate the situation, and that the company suffered losses as a result. The Complaint alleges that Defendants failed to register the Share Transfer Agreement with the Secretary of State of Delaware and as a result they must return Plaintiffs' investment money. However, there is no such requirement under the Delaware law.

**Delaware Corporation Code § 18-301. Admission of members** provides that

*a) In connection with the formation of a limited liability company, a person is admitted as a member of the limited liability company upon the later to occur of:*

*(1) The formation of the limited liability company; or*

*(2) The time provided in and upon compliance with the limited liability company agreement or, if the limited liability company agreement does not so provide, when the person's admission is reflected in the records of the limited liability company or as otherwise provided in the limited liability company agreement.*

*(b) After the formation of a limited liability company, a person is admitted as a member of the limited liability company:*

*(1) ... upon the consent of all members or as otherwise provided in the limited liability company agreement;*

*(2) In the case of an assignee of a limited liability company interest, as provided in § 18-704(a) of this title;*

*(3) In the case of a person being admitted as a member of a surviving or resulting limited liability company pursuant to a merger or consolidation ..., as provided in the limited liability company agreement of such limited liability company; or*

*(4)... "*

Under the Delaware law quoted above, the Operating Agreement of the members and the Share transfer agreement were all that was needed to record the transfer of membership interest. Defendants did not, knowingly or unknowingly, violate the Delaware law of the US Securities laws. Provision 3.4.3 specifies that the GP can be held liable only for Significant Misconduct defined as serious neglect, material breach of the Agreement, fraud, serious violation of securities laws. It cannot be held liable for minor neglect, provision of information to L.P. or any conduct or non-conduct considered as being goodwill.

Plaintiffs have failed to state which of Defendants and their specific instances of conduct, misrepresentation, or failure to act, are actionable by which Plaintiff for damages (under any applicable law or the Investment Agreement ). Plaintiffs have also failed to state what were the specific things said or done, to which person, and the method of communication and transmission for the fraudulent communication, which have caused either Plaintiff to suffer any financial loss in reliance thereto. The financial loss must be suffered by Leo ME, who is the only party who has standing to sue for arbitration in Hong Kong under the Investment Agreement.

-28-

Plaintiff's merely asking for the return of the money to which they were not entitled, does not impose a duty of care on Defendants to comply and give them the money. Plaintiffs must show one or both Defendants have actually retained or withheld part or all of the original Investment Fund. This is negated by allegations in ¶26-¶27 of the Complaint. The cause of action for breach of fiduciary duty must be dismissed without leave to amend.

### 5. THIRD CAUSE FOR FRAUD FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The following cases are examples of numerous court cases setting the standard for raising allegations of fraud in US District Courts.

#### A. Heightened Pleading Standard For Fraud Or Mistake

Rule 9(b) provides:

> "*FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.*"

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims:

> "*state with particularity the circumstances constituting fraud or mistake.*" *Fed. R. Civ. P. 9(b). To satisfy this standard, a plaintiff must identify "the time, place, and content of [the] alleged misrepresentation [s]," as well as the "circumstances indicating falseness" or "manner in which the representations at issue were false and misleading.*" *In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 (9th Cir. 1994) (internal quotation marks and modifications omitted). The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.*"

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

> " *As the Ninth Circuit has explained, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff*

*must set forth an explanation as to why the statement or omission complained of was false or misleading."*

In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1404 (9th Cir. 1996).

*"In order to properly plead fraud with particularity, the complaint must allege the time, and content of the fraudulent representation such that a defendant can prepare an adequate response to the allegations."* In re Kimmel, 2008 WL 5076380 at *1.

## B. Elements of Fraud Causes of Action

In *Federal Sav. and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053 (N.D. Cal. 1988) quoting *Reed v. King*, 145 Cal. App. 3d 261, 264, 193 Cal. Rptr. 130, 131 (3d Dist. 1983) (quoting 1 Witkin, *Summary of Cal.Law* (8th ed. 1973) Contracts, ¶ 315) (italics in original) (footnote omitted), the court ruled:

> *"There must be (1) a* false representation *or concealment of a material fact ... susceptible of knowledge, (2) made with* knowledge *of its falsity or without sufficient knowledge on the subject to warrant a representation, (3) with the* intent *to induce the person to whom it is made to act upon it; and such person must (4) act in* reliance *upon the representation (5) to his* damage."

In *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (Cal. 1985), the court held

> *"To prove fraud on the part of Banco, Wang must establish the following elements: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). A promise made "with an honest but unreasonable intent to perform" is not the same as making a false promise constituting fraud. Tarmann v. State Farm Mut. Auto Ins. Co., 2 Cal.App.4th 153, 159 (1991). "[S]omething more than nonperformance is required to prove defendant's intent not to perform his promise.".*

The heightened pleading standard is commonly cited as requiring the allegations to identify "the who, what, when, where, and how of the misconduct charged." See, e.g. *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1167 (9th Cir. 2016); *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). A plaintiff must allege "enough facts to state a

claim that is plausible on its face," not just conceivable. *Twombly*, 127 S. Ct. at 1974. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> "*However, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotation omitted).

See also *In re Miltenberger*, 538 B.R. 547, 553 (Bankr. E.D. Mo. 2015), *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003), *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 536 F.Supp.2d 1129, 1134 (N.D. Cal. 2008) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)), *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Here, Plaintiffs have failed to state which of Defendants and their specific instances of conduct, misrepresentation, concealment or conversion, which are actionable under any applicable law or the Investment Agreement (date, description and Plaintiffs' reliance and loss), are actionable fraud under Rule 12(b). General allegations of failure to disclose information in a timely manner regarding HTT Investment, without specifying which material information were withheld, must be ignored by the Court. Plaintiffs have simply failed to show there were specifics acts, concealments or conversion which they became aware of on specific dates and the circumstances how they learned, whether they relied upon, and as a result of which they suffered a financial loss. The name of the officer of each corporate Plaintiff should be identified and the date and place each statement was made or a refusal to act was conveyed by specific corporate officers of EWI Capital, what remedial actions were taken by Plaintiffs or Defendants and what were the damages suffered as a result of each such fraudulent act. Just merely rejecting Plaintiffs' unreasonable demands for the return of the HTT Investment which is controlled by Plaintiffs (see ¶26-¶27), barring evidence of illegal retention of Plaintiffs' money

by Defendants, does not entitle Plaintiffs to relief for fraud in Federal Court. This cause of action must be dismissed without leave to amend as Plaintiffs have not shown a contemporaneous fraudulent intent by Defendants to support the allegations of fraud or proof that they suffered any damages as a result of the alleged fraud.

## 6. PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND

Pursuant to Rule 15(a), a plaintiff may amend its complaint as matter of course only within certain circumstances, none of which is applicable to this case. Otherwise, plaintiff must seek leave of the court or the opposing party's written consent. "Only an amended complaint that is properly filed pursuant to the requirements of Rule 15 requirements can supersede the original." *Taa v. Chase Home Finance, LLC*, No. 5:11-cv-00554-EJD, 2012 WL 507430 at *1 (N.D. Cal., Feb. 15, 2012).

Generally, however, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the Plaintiff an opportunity to amend. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Where a claim is frivolous or the "complaint alleges the plaintiff's best case," a further factual statement from the plaintiff need not be allowed. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

The whole Complaint and the unsubstantiated conclusion that Defendants must return the $5 million Investment Fund to Plaintiffs is bizarre and lack probable cause.

## 7. ATTORNEYS FEES

Provision 4.3 of the Investment Agreement states that the prevailing party is entitled to attorneys' fees and costs. The Court is respectfully requested to order dismissal of the Complaint without leave to amend and to order Plaintiffs to pay Defendants' attorneys' fees and disbursements.

DATED: 06/28/2021          ROSHANIAN PAYMAN, PC

By: _____
Tamineh Roshanian, Attorneys for
Defendants EWI Capital, LLC and Zhe Zhang

-32-